IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CATHERINE MARIE JACOBS, | § § | |
| *Plaintiff*, | § § | 5-17-CV-429-XR-RBF |
| vs. | § § § | |
| NANCY A. BERRYHILL, COMMISSIONER OF SOCIAL SECURITY, | § § § § | |
| *Defendant*. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Xavier Rodriguez:**

  This Report and Recommendation concerns Plaintiff Catherine Marie Jacobs's request for judicial review of the administrative denial of her application for disability-insurance benefits under Title II of the Social Security Act and supplemental security-income insurance under Title XVI of the act. This action was assigned to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 1(h) of Appendix C to the Local Rules, and the docket management order entered on September 29, 2017, in the San Antonio Division of the Western District of Texas. This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. § 405(g). The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After considering Jacobs's Brief, Dkt. No. 12, the Brief in Support of the Commissioner's Decision, Dkt. No. 13, the transcript of the administrative proceedings ("Tr."), Dkt. No. 8, the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the undersigned finds that substantial evidence supports the Commissioner's decision that Jacobs is able to perform past relevant work

and is therefore not disabled. It is therefore recommended that the Commissioner's decision be **AFFIRMED**.

I. **Background**

Jacobs filed her application for disability-insurance benefits and supplemental security income in mid-November of 2013, alleging a disability onset date of November 8, 2013. Tr. 243-50. Jacobs was 52 years old on the date she alleges she became disabled and less than a month shy of 55 years old at the time of the Administrative Law Judge's ("ALJ") decision. Jacobs has a ninth-grade education, a GED, and past relevant work experience as a travel reservations clerk, customer service representative, insurance and benefits clerk, and order clerk—all sedentary skilled or semi-skilled occupations. *Id.* 92, 104-105.

Jacobs alleges the following impairments render her disabled: panic disorder as a result of a traumatic brain injury; gait and balance problems; post-traumatic stress disorder (PTSD); anxiety; lumbar and cervical spondylosis; and migraine headaches. *Id.* 91. Jacobs's claims were initially denied on February 21, 2014, *id.* 141-44, and once again on reconsideration, *id.* 185-88. Jacobs than requested an administrative hearing. *Id.* 189. She and her attorney attended the hearing before ALJ Janice L. Holmes on November 19, 2015. Jacobs and vocational expert Jeffrey Kiehl testified. *Id.* 27.

On February 29, 2016, the ALJ denied Jacobs's claim for benefits. *Id.* 51-63. After finding that Jacobs met the insured-status requirements of the Social Security Act, the ALJ applied the required five-step sequential analysis. At step one, the ALJ found that Jacobs had not engaged in substantial gainful activity since November 8, 2013, the alleged onset date of her disability. *Id.* 54. At step two, the ALJ found that Jacobs has the following severe impairments: cervical and lumbar spine degenerative disc disease; migraines; organic disorder due to traumatic brain injury; anxiety; and major depressive disorder. *Id.* At step three, the ALJ found that none of

2

these impairments met or medically equaled the impairments of one of the listed impairments in the applicable Social Security regulations. *Id.* 54-55.

Before moving to step four, the ALJ found that Jacobs retained the physical and mental residual functional capacity to perform less than a full range of light work, as defined in 20 CFR § 404.1567(b) and 414.967(b). *Id.* 56-60. Specifically, the ALJ determined that Jacobs "can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk four hours in an eight-hour workday, and sit six hours in an eight hour workday." *Id.* In connection with Jacobs's physical residual functional capacity, ALJ limited Jacobs to "occasional balancing, stooping, kneeling, crouching, crawling, or climbing ramps and stairs, no climbing of ladders, ropes, or scaffolds, and no exposure to hazards such as work at unprotected heights or near moving mechanical parts, and no operation of moving vehicles." *Id.* With respect to Jacobs's mental residual functional capacity, the ALJ limited Jacobs "to understanding, remembering, and carrying out detailed tasks/instructions." *Id*.

Then, at step four, the ALJ considered Jacobs's residual functional capacity as well as the testimony of the vocational expert, and then determined Jacobs was able to perform the past relevant work of an insurance-benefits clerk and order clerk, positions that are at the sedentary, semi-skilled level. *Id.* 61.[1] Alternatively, the ALJ conducted a step-five analysis and found that considering Jacobs's age, educational factors, prior work experience, and residual functional capacity, as well as the testimony of the vocational expert, Jacobs could perform the various jobs existing in significant numbers in the national economy; namely, the position of an office helper, garment sorter, and ticket taker—all of which are occupations at the light exertional and

---

[1] Although the ALJ defined these positions as "light" in her opinion, this appears to be a harmless typographical error in light of the testimony by the vocational expert. *See* Tr. at 107. It is also not challenged by Jacobs.

unskilled levels. *Id.*[2] The ALJ then determined Jacobs is not disabled for purposes of the Social Security Act and, therefore, is not entitled to receive benefits. *Id.*

Jacobs requested review of the ALJ's findings, and the Appeals Council ultimately denied relief. *Id.* 1-5. On May 12, 2017, after exhausting all available administrative remedies, Jacobs filed suit for judicial review of the administrative determination. Dkt. No. 1.

## II. Legal Standards

*Standard of Review*. To review the denial of benefits, a court determines only whether the Commissioner's decision applied the proper legal standards and is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

A reviewing court will "weigh four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education, and work history." *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

A reviewing court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not a court, to resolve. *Id.* Factual findings

---

[2] These numbers of existing jobs were then reduced to account for Jacobs's physical limitations. *See* Tr. 108.

4

supported by substantial evidence are conclusive; legal conclusions and claims of procedural error are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 235 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479-80 (N.D. Tex. 2001).

*General Entitlement to Benefits*. The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant like Jacobs is disabled only if her physical or mental impairment or impairments are so severe that she is unable to perform her previous work and cannot—considering her age, education, and work history—participate in any other kind of substantial gainful work that exists in significant numbers in the national economy and regardless of whether such work exists in the area in which she lives, a specific job vacancy exists, or she would be hired if she applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

*Overview of the Evaluation Process and Burden of Proof*. "To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents him [or her] from engaging in any substantial gainful activity." *Carr*, 133 F. Supp. 2d at 479. To determine whether substantial gainful activity is possible, the pertinent regulations require a five-step sequential inquiry. *See id.*; 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b)). An individual working and engaging in substantial gainful activity will not be found disabled, regardless of medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b).

Step two addresses whether the claimant has a medically determinable physical or mental impairment that is severe, or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quotation marks omitted). An individual without a "severe impairment" will not be considered disabled. 20 C.F.R. § 404.1520(c).

At step three, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations ("the Listings") will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). But if the claimant does not qualify under the Listings, then the evaluation continues to the fourth step. Before commencing the fourth step, the claimant's residual functional capacity is assessed. This involves a "multidimensional description of the work-related abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *see also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).

At the fourth step, the residual-functional-capacity assessment and the demands of the claimant's past relevant work are reviewed. 20 C.F.R. § 404.1520(f). Past relevant work constitutes either "the actual demands of past work" or "'the functional demands . . . of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen,* 829 F.2d 524, 527 n.2 (5th Cir. 1987) (quoting SSR 82-61). If an individual is capable of performing the work she has actually performed in the past or as defined by the Department of Transportation, a finding of "not disabled" will be made. 20 C.F.R. § 404.1520(f).

The fifth step evaluates the claimant's ability—given residual capacities, age, education, and work experience—to perform other work. 20 C.F.R. § 404.1520(g). If an individual's impairment precludes performing any other type of work, the claimant will be found disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies her burden under the first four steps, the burden then shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back again to the claimant to prove inability to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step evaluation is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### III. Analysis

Jacobs argues the ALJ committed two errors requiring remand. Jacobs argues the ALJ first erred by failing to find any mental impairments when determining Jacobs's residual functional capacity. According to Jacobs, this failure contradicts the ALJ's findings at steps two and three regarding the severity of Jacobs's mental impairments—findings Jacobs asserts necessarily limit her ability to perform even unskilled work. Next, Jacobs argues the ALJ erred a second time, at step five, by failing to engage in a "legally required" borderline-age analysis that is set forth in the Commission's Program Operations Manual System. Jacobs's arguments are unavailing, as will be discussed in more detail next.

*Residual Functional Capacity*. Jacobs first takes issue with the ALJ's evaluation of her residual functional capacity and the associated step-four determination that she can perform her

7

past relevant work. The residual-functional-capacity determination "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citing SSR 96–8p, 1996 WL 374184, at *1 (S.S.A. 1996)). "The RFC [residual-functional-capacity] assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," and must include "a resolution of any inconsistencies in the evidence." *Id.* "'At bottom, however, RFC [residual-functional-capacity] determinations are inherently intertwined with matters of credibility,' and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Outlaw v. Astrue*, 412 Fed. App'x 894, 897 (7th Cir. 2011) & *Newton*, 209 F.3d at 459).

In arguing that the step-two and step-three findings on the severity of her mental impairments necessarily require imposition of functional limitations, Jacobs conflates separate inquiries. A finding of severity at step two "means only that [a claimant] has passed the second step of the inquiry mandated by the regulations." *Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987) (per curium). Likewise, the limitations identified in an ALJ's evaluation at step three "are not an RFC [residual-functional-capacity] assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Audler v. Soc. Sec. Admin.*, No. CIV.A. 12-2883, 2014 WL 2611284, at *13 (E.D. La. Jun. 11, 2014) (quoting SSR 96–8p, 1996 WL 374184, at *4). In other words, an impairment is not the same thing as functional limitations on the ability to work that may be (or not) caused by an impairment. *See Bordelon v. Astrue*, 281 Fed. App'x 418, 422 (5th Cir. 2008).

Jacobs cites no convincing authority to support her argument that an ALJ must not only assign a limitation for every impairment meeting the threshold definition of a severe impairment but also that a severe impairment necessarily impacts a claimant's ability to perform even

8

unskilled work. Courts, in fact, have rejected this type of argument. *See, e.g.*, *Ward v. Colvin*, No. CV G-15-095, 2016 WL 3919665, at *10 (S.D. Tex. Feb. 29, 2016), *report and recommendation adopted*, 2016 WL 3855871 (S.D. Tex. Jul. 15, 2016) ("[Claimant's] argument that the ALJ's evaluation at Steps 2 and 3 necessarily supports a decreased RFC [residual-functional-capacity] determination is improper."); *Walker v. Colvin*, No. 3:14-CV-1498-L (BH), 2015 WL 5836263, at *15 (N.D. Tex. Sept. 30, 2015) ("[S]everal Texas federal courts have found that an ALJ does not err solely by finding an impairment severe at step two and failing to attribute any limitation to that impairment in his RFC assessment.") (collecting authorities); *Harper v. Colvin*, No. 3:14CV49TSL-JCG, 2015 WL 898235, at *4 (S.D. Miss. Mar. 3, 2015) (rejecting argument that the ALJ was required to include limitations in the residual functional capacity for all impairments deemed severe in step two and noting that "many opinions" reject such a position) (collecting authorities).

Moreover, contrary to Jacobs's assertions, the ALJ here *did* adopt mental limitations when formulating Jacobs's residual functional capacity. Specifically, the ALJ determined that Jacobs was mentally "limited to understanding, remembering, and carrying out detailed tasks/instructions." Tr. 56. In making this finding, the ALJ primarily relied on a January 21, 2014, psychological consultative examination. Tr. 57-58. During the psychological interview, the examiner noted that Jacobs's thought processes were "coherent, logical and goal directed. There were no loosening of associations, flight of ideas or thought blocking." *Id.* (citing Tr. 362). Although Jacobs exhibited some distracted thinking, her "[i]mmediate, recent, and remote memory were generally intact" and she had "fair judgment and fair insight." *Id.* In sum, according to the examiner, an "[e]valuation of [Jacobs's] cognitive processes indicated the claimant's attention and concentration skills were mildly impaired." *Id.* Further, although Jacobs tested lower than average in certain areas, her "verbal IQ was much more affected than the performance IQ, which was in the average range," and her processing speed was borderline

average. *Id.* (citing Tr. 364); *see also* Tr. 368. Accordingly, the ALJ explained that the evidence revealed "[n]o specific limitations . . . in activities of daily living and in social functioning." *Id.*

Notably, the ALJ did not credit Jacobs's assessment of her own cognitive functioning. Specifically, the ALJ noted that Jacobs's self-assessment did not match up with statements made by her husband. *Id.* (citing Tr. 401). Jacobs also "inexplicably [performed] better on more difficult [cognitive functioning] measures than easier ones, *suggesting a self-motivation for not recovering or getting better over time*." *Id.* (emphasis in original). After analyzing the findings in the January 2014 consultative report, discounting Jacobs's credibility and other unsubstantiated sources in the record, the ALJ determined that Jacobs's "abilities in concentration, persistence, or pace are at most moderately limited, with a residual ability to perform no more than detailed tasks." *Id*. 58, 60.

Jacobs does not dispute the ALJ's primary reliance on the January 2014 psychological report to assess her mental-functional limitations or even the ALJ's characterization of her mental functional capacity as "moderately limited." Instead, Jacobs urges that a "moderate" finding in the areas of concentration, persistence, or pace necessarily "indicates the presence of at least some level of limitation in the ability to handle simple tasks, use judgment, or deal with changes in a routine work setting." Pl. Br. at 5. But no such functional limitation is included in the report. Nor does Jacobs identify any evidence in the record suggesting that she is functionally limited in this manner.[3]

---

[3] *See Leggett*, 67 F.3d at 564 ("The burden of proof lies with the claimant to prove disability under the first four parts of the inquiry."); *Kirkpatrick v. Colvin*, 663 Fed. App'x 646, 649, 2016 WL 5920745, at *3 (10th Cir. 2016) (rejecting plaintiff's argument regarding the alleged omission of certain limitations in the residual-functional-capacity finding and noting "[plaintiff] doesn't explain how these restrictions fail to account for his [limitations]. And, it isn't our obligation to search the record and construct a party's arguments."); *Hartman v. Colvin*, No. 5:13cv00109, 2015 WL 877360, at *7 (W.D. Va. Mar. 2, 2015) ("Although this Court reviews the RFC[residual-functional-capacity] determination for substantial evidence, the claimant bears the burden of showing that an omitted limitation should have been included."); *Plumber v. Astrue*, No. 5:11CV006-RLV-DSC, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) ("The

Further, several courts have found that similar residual functional capacities restrict a claimant to following detailed, but not complex,[4] instructions consistent with a finding of moderate functional deficits in concentration, persistence, and pace. *See Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010), *report and recommendation adopted*, 2010 WL 3658996 (N.D. Tex. Sept. 17, 2010); ("[T]he ALJ's finding that [the claimant] was moderately limited in her ability to maintain concentration, persistence, or pace is not inherently contradictory with an RFC [residual functional capacity] assessment that [the claimant] could not perform work that involves complex instructions. Work that is not complex would most likely not require an abundance of concentration, persistence, or pace"); *see also Cobb v. Berryhill*, No. 4:17-CV-00106-A, 2017 WL 6492078, at *6 (N.D. Tex. Nov. 29, 2017), *report and recommendation adopted*, 2017 WL 6493237 (N.D. Tex. Dec. 15, 2017); *Holmes v. Astrue*, No. 3:11-CV-2634-G-BH, 2013 WL 638830, at *16 (N.D. Tex. Jan. 25, 2013), *report and recommendation adopted*, 2013 WL 646510 (Feb. 20, 2013); *De La Rosa v. Astrue*, No. EP–10–CV–351–RPM, 2012 WL 1078782, at *14-15 (W.D. Tex. Mar. 30, 2012); *Westover v. Astrue*, No. 4:11–CV–816–Y, 2012 WL 6553102, at *10 (N.D. Tex. Nov. 16, 2012).

The ALJ properly discussed the evidence in the record in making the residual-functional-capacity determination, explained the reasoning for the determination, and exercised her responsibility as factfinder in weighing the evidence and choosing to incorporate limitations into the residual-functional-capacity assessment that were most supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because substantial evidence supports the ALJ's evaluation of Jacobs's mental residual-functional-capacity assessment, remand is not

---

claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC [residual functional capacity].").

[4] When posing her hypothetical question to the vocational expert, the ALJ clarified that the individual was "limited to understanding, remembering, and carrying out detailed but *not complex instructions*." Tr. at 106-107 (emphasis added).

appropriate. *See Smith v. Colvin*, No. 3:15-CV-02964-BH, 2016 WL 5086073, at *11 (N.D. Tex. Sept. 19, 2016) ("A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.") (citing *Leggett*, 67 F.3d at 564). Significant to this conclusion is that "[t]he ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985); *see also Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (explaining that "the determination of residual functional capacity is the sole responsibility of the ALJ"). Further, courts must "give[] great deference to the ALJ's residual functional capacity determination because it is 'precisely the kind of determination that the ALJ is best positioned to make.'" *Jacquez v. Colvin*, No. 3:12-CV-00370-ATB, 2013 WL 5522661, at *8 (W.D. Tex. Oct. 2, 2013) (quoting *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994)).

Nor did the ALJ reversibly err in finding that Jacobs could perform her past relevant work as an insurance and benefits clerk and order clerk. At step four, the ALJ asked the vocational expert to assume a hypothetical individual of Jacobs's age, with similar education and past work experience, and with a residual functioning capacity matching Jacobs's. Tr. at 106-107. In response, the vocational expert explained that such a hypothetical individual could perform Jacobs's past relevant work as an insurance-benefit clerk and an order clerk. *Id.* Jacobs does not dispute her physical residual-functional-capacity assessment and, as discussed above, her mental residual-functional-capacity assessment is supported by substantial evidence. "It is well established that a vocational expert's testimony constitutes substantial evidence supporting an ALJ's decision regarding ability to perform past work when a vocational expert is asked a hypothetical question incorporating all of a plaintiff's RFC [residual-functional-capacity] limitations." *Stancle v. Colvin*, No. 4:15-CV-00405-CAN, 2016 WL 3172784, at *7 (E.D. Tex. Jun. 7, 2016); *see also Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (upholding

ALJ's hypothetical question when it "scrupulously incorporated all of [the claimant's] disabilities supported by evidence and recognized by the ALJ"). Accordingly, the ALJ did not err at step four.

*Jacobs's Step-Five Argument Need Not Be Addressed.* Because the ALJ's step-four finding of no disability is supported by substantial evidence, the undersigned need not address Jacobs's objections to the ALJ's step-five analysis. *See Lovelace*, 813 F.2d at 58; *see also Masterson*, 309 F.3d at 272 ("A finding that the claimant is not disabled at any step is conclusive and ends the inquiry."). At most, any failure in connection with the step-five analysis in this case would have been harmless given that substantial evidence supports the ALJ's step four finding that Jacobs is not disabled.

### IV. Conclusion

For the reasons discussed above, substantial evidence supports the Commissioner's decision. The undersigned therefore recommends that the Commissioner's decision that Jacobs is not disabled be **AFFIRMED.**

All matters for which the above-entitled and numbered case were referred to the undersigned have been considered and acted upon. **IT IS THEREFORE ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party

filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    **IT IS SO ORDERED**.

    SIGNED this 6th day of July, 2018.

    RICHARD B. FARRER
    UNITED STATES MAGISTRATE JUDGE